Alan P. Block (SBN 143783)
ablock@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Theodore Stevenson III (TX SBN 19196650)
(*Pro Hac Vice to be Submitted*)
tstevenson@mckoolsmith.com
Ashley N. Moore (TX SBN 24074748)
(*Pro Hac Vice to be Submitted*)
amoore@mckoolsmith.com
Abigail E. Clark (KY SBN 98461)
(*Pro Hac Vice to be Submitted)*
aclark@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:   (214) 978-4000
Facsimile:   (214) 978-4044

Attorneys for Plaintiff
K-fee System GmbH

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| K-fee System GmbH,<br><br>               Plaintiff,<br><br>v.<br><br>Nespresso USA, Inc.,<br>Nestlé Holdings, Inc. d/b/a/ Nestlé USA,<br>Inc., and Nestlé S.A.,<br><br>               Defendants. | Case No. 2:21-cv-3402<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

McKool Smith, P.C.

Plaintiff K-fee System GmbH ("K-fee" or "Plaintiff") brings this Complaint against Nespresso USA, Inc., Nestlé Holdings, Inc., and Nestlé S.A. (collectively "Nespresso" or "Defendants") for infringement of U.S. Patent Nos. 10,858,176 (the '176 Patent), 10,858,177 ("the '177 Patent"), and 10,870,531 (the '531 Patent) (collectively, the "K-fee Patents").

## SUMMARY OF THE ACTION

1.     This is a patent infringement suit concerning Defendants' unauthorized and unlicensed use of the K-fee Patents to manufacture and sell single-use coffee capsules and related systems. The beverage system and methods claimed in the K-fee Patents are integral components of Defendants' Vertuo systems and corresponding Vertuo pods.

2.     Krüger GmbH & Co. KG began as an instant tea company with 12 employees in 1971, but has grown into a food and beverage powerhouse that now employs about 5,000 people in 10 countries around the world. As part of that expansion, Krüger envisioned bringing not only tea, but café-style coffees into its customers' homes. After two years of intensive research and development, Krüger completed its pioneering work on a single-serve, multi-beverage product. It launched the new capsule system in 2010, first in Germany and quickly expanded to Australia, Canada, and eventually the United States. In 2012, K-fee was created to handle the capsule business.

3.     K-fee's capsule systems include both capsules and machines that work together to deliver the perfect cup, whether it is an espresso, coffee, tea, hot chocolate, or milk specialty drink. The unique capsules protect the beverage's freshness and ensure the correct pressure and flow rate. However, Krüger and K-fee's efforts did not stop there. Its next evolution included an innovative barcode system. The capsule contains a barcode that informs the beverage machine of the optimum brewing parameters (such as temperature, pressure, and water amount) for the particular coffee,

1

McKOOL SMITH, P.C.

tea, or specialty drink contained within the capsule. The United States Patent and Trademark Office also recognized the inventiveness of these ideas by issuing K-fee several patents, which are asserted here.

4.      Nespresso, founded in 1986, is a premium-price coffee company that also offers single-serve coffee capsules and systems. Nespresso is a subsidiary of Nestlé S.A., which is a Swiss multinational food and drink processing conglomerate. Nestlé USA is the holding company for Nestlé S.A.'s principal operating subsidiaries in the United States. Defendants developed the Vertuo system of machines and coffee capsules specifically for North American consumers, and began marketing the system in the United States and Canada in 2014.

5.      Defendants' Vertuo pods infringe K-fee's patent claims. K-fee therefore brings this action to address Defendants' unauthorized use of K-fee's patented inventions.

## THE PARTIES

### I.     K-FEE

6.      K-fee is a company organized under the laws of Germany with a principal place of business at Senefelderstraße 44, 51469 Bergisch Gladbach, Germany. K-fee is a wholly-owned subsidiary of Krüger GmbH & Co. KG, ("Krüger") (Krüger and its direct and indirect subsidiaries the "Krüger Group") along with Krüger North America, Inc. ("Krüger North America").

7.      K-fee and Krüger North America offer three different capsule-brewing machines, along with a selection of coffee and tea products, and other beverage accessories to customers in the United States. These products work together to create an all-inclusive beverage system that uses K-fee's unique technologies. K-fee's proprietary "Smart Brew" and "Duo Pressure" systems provide optimal brewing conditions based on K-fee's patented technologies.

McKool Smith, P.C.

2

8.     K-fee and its parent Krüger invest heavily in producing the best batches of coffee and carefully curated coffee systems available on the market today. K-fee works constantly to improve production and development, particularly its Smart Brew and Duo Pressure technologies, while Krüger has invested substantial resources in solidifying the brand's reputation as a top-tier food supplier that offers the highest quality products.

## II.    DEFENDANTS

9.     Nespresso USA, Inc. ("Nespresso") is organized under the laws of the state of Delaware and maintains its principal place of business at 100 Park Avenue, 7th Floor, New York, New York 10017. Nespresso is a privately-held subsidiary of Nestlé S.A. that sells single-serve coffee products.

10.     Nestlé Holdings, Inc. ("Nestlé USA") is incorporated under the laws of Delaware. On information and belief, until recently, Nestlé USA operated its principal place of business at 800 North Brand Boulevard, Glendale, California 91203. Nestlé USA recently opened a principal place of business at 1812 North Moore, Arlington, VA 22209. Nestlé USA is the holding company for Nestlé S.A.'s principal operating subsidiaries in the United States.

11.     Nestlé S.A. is a Swiss corporation and maintains its principal place of business at 55 Avenue Nestlé, 1800, Vevey, Switzerland. Nestlé S.A. is the ultimate parent corporation of Nespresso.

12.     Defendants directly and/or indirectly develop, design, manufacture, use, distribute, market, offer to sell, and/or sell infringing products and services in the United States, including in this District, and otherwise purposefully direct infringing activities to this District in connection with their products and services.

## JURISDICTION AND VENUE

13.     This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. Accordingly, this Court has subject matter jurisdiction pursuant to

3

McKool Smith, P.C.

28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents). Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

14.    More specifically, this action for patent infringement involves Defendants' manufacture, use, sale and/or lease, and offer for sale and/or lease, of infringing beverage systems and capsules, including the Vertuo Next, VertuoPlus, Evoluo, and Vertuo product lines (the "Infringing Products").

15.    Nespresso operates numerous retail spaces located in the Central District of California. Nespresso operates Nespresso Boutiques at 6600 CA-27, Canoga Park, CA 91303; 408 N Beverly Dr., Beverly Hills, CA 90210; 14060 Riverside Dr., Sherman Oaks, CA 91423; 6333 W 3rd St Suite P-10, Los Angeles, CA 90036; 129 Newport Center Dr., Newport Beach, CA 92660; and 718 Americana Way, Glendale, CA 91210. These Nespresso locations are staffed by persons directly employed by Nespresso, many of whom live in this District.

16.    Nestlé USA has offices physically located in the Central District of California. Nestlé USA currently maintains and offers retail and sales jobs in Canoga Park, Los Angeles, and Glendale, California, on its website.[1] Nestlé USA owns and/or leases the premises where these offices are located. In addition, Nestlé USA maintains a distribution center related to the Infringing Products at 3450 Dulles Dr., Mira Loma, CA 91752. These Nestlé USA locations are staffed by persons directly employed by Nestlé USA, many of whom live in this District. Nestlé USA employs numerous individuals whom live in and/or work within this District.

---

[1] *See*, *e.g.* , *Careers*, NESTLÉ USA, https://www.Nestléusacareers.com/job-search-results/?location=Glendale%2C%20CA%2C%20USA&latitude=34.1425078&longitude=-118.255075&radius=25&pg=2 (last visited March 26, 2021).

McKool Smith, P.C.

4

17.    Nestlé S.A. owns and controls Nestlé USA and its operations in the Central District of California, and has purposefully availed itself of the privilege of doing business in this District. Nespresso is 100% privately held and controlled by Nestlé S.A., and the two entities share leaders.[2] Nestlé S.A. is involved in the development and/or distribution of the Infringing Products, including the production of Vertuo pods sold in this District.[3] Nestlé S.A. also pitched the Vertuo system to its investors in 2014 as an example of Nestlé S.A.'s advancements.[4] Nestlé S.A. recently made a large investment in an "innovation center" where work will focus on developing new beverage machines and "support our Vertuo business."[5] Nestlé S.A. thus controls the marketing and sale of Vertuo products in the United States generally, and this District in particular, with the numerous individuals whom live in and/or work for Nestlé S.A. within this District.[6]

18.    Defendants have committed and continue to commit acts of infringement in violation of 35 U.S.C. § 271, and have made, used, marketed, distributed, offered for sale, sold, and/or imported their Infringing Products in the State of California,

---

[2] https://www.finchannel.com/business/79308-changes-in-nestle-s-executive-board.

[3] *See, e.g.,* USD734,665, listing assignee as Societe des Produits Nestle S.A.; *see also* trademark registration of "Vertuo" mark by Societe des Produits Nestle S.A. at Registration No. 4,438,828; https://www.bnnbloomberg.ca/wfh-caffeine-shots-gives-nestle-nespresso-a-boost-1.1453477 (last visited March 29, 2021); https://stories.starbucks.com/press/2018/starbucks-and-nestle-form-global-coffee-alliance/.

[4] https://www.nestle.com/sites/default/files/asset-library/documents/investors/nis-2014-boston/nespresso.pdf

[5] *Nespresso opens Innovation Center,* BEVERAGE DAILY, https://www.beveragedaily.com/Article/2018/11/21/Nespresso-opens-innovation-center-and-boosts-Vertuo-production (last visited April 8, 2021); *Nespresso invests CHF 43 million in its Romont site,* NESTLÉ https://www.nestle.com/media/news/nespresso-investment-romont-site (last visited April 8, 2021).

[6] Nestlé S.A., as "Nestlé International," currently advertises at least one job opening in Los Angeles, California. *See Careers,* NESTLÉ, https://www.Nestleusacareers.com/job/12477841/customer-account-analyst-los-angeles-ca/ (last visited March 26, 2021).

5

McKOOL SMITH, P.C.

including in this District, and engaged in infringing conduct within and directed at or from this District.

19.    Defendants conduct their regular, established business at their locations in this District. These locations and employees work to develop, provide, maintain, make available, use, and assist others in using the Infringing Products, including customers in this District, across the United States, and worldwide. Additionally, Defendants have purposefully and voluntarily placed the Infringing Products into the stream of commerce with the expectation that the Infringing Products will be used in this District. Defendants have and continue to cause the Infringing Products to be distributed and used in this District. Defendants' acts injure K-fee everywhere the Infringing Products are sold and used, including within this District.

20.    This Court has general and/or specific personal jurisdiction over Defendants, and venue is proper because Defendants, directly and/or in combination with their parents, subsidiaries, and/or through their agents, conduct continuous and systematic business in this District. This business includes providing Infringing Products to residents of this District, providing their Infringing Products when Defendants knew they would be used in this District, and/or participating in the solicitation of business from residents of this District.

21.    Moreover, Defendants, directly or through their parents or subsidiaries, place their Infringing Products into the stream of commerce, which is directed at this District, with the knowledge and/or understanding that such Infringing Products will reach customers within this District. In addition, Defendants, directly or through their parents or subsidiaries, employ individuals within this District, including employees who design, develop, use, offer, or make available their Infringing Products to customers here, and maintain offices, stores, and other facilities here. Defendants, directly or through their parents or subsidiaries, operate retail stores, offices, and distribution centers in this District. Customers in this District regularly frequent these

McKool Smith, P.C.

6

locations to buy and use the Infringing Products, while employees regularly frequent these locations to use, sell, offer for sale, market, and develop the Infringing Products.

22.     Venue is appropriate in this Court because K-fee maintains business connections to this District. As one example, K-fee, through Krüger North America, provides beverage capsules and systems to consumers in this District.

## FACTUAL BACKGROUND

### I.     K-FEE'S DEDICATION TO COFFEE INNOVATION

23.     K-fee has established itself as an innovator in the world of at-home coffee. Krüger created K-fee as a separate operating unit specifically so that K-fee could focus solely on coffee systems and products.

24.     Krüger began in 1971 with a single entrepreneur—Willibert Krüger—and an idea for granulated tea that he developed in a room adjoining his parents' wholesale business. The company expanded by leaps and bounds in the 1980s, acquiring subsidiaries and establishing production facilities. In the 1990s Krüger expanded into milk products, chocolate, and intermediate food products. By 2008, with the company generating over 1.56 billion euros of revenue, Krüger ventured into the coffee pod industry, establishing K-fee to lead that charge.[7]

25.     After years of intensive research and development, K-fee launched its unique K-fee capsule and beverage system. The system provides consumers with access to a variety of café-style coffee drinks, including espresso, lungo, brew-style coffee, cappuccino, lattes, and macchiatos.[8]

26.     In 2012, K-fee partnered with Starbucks and brought its capsule system to the United States. Then, in 2019, K-fee independently entered the American market

---

[7] *Our History*, KRÜGER GROUP, https://www.krueger-group.com/en/krueger-group/history (last visited March 26, 2021).
[8] *The K-fee Concept*, K-FEE, https://K-fee.us/pages/why (last visited March 26, 2021).

McKool Smith, P.C.

with its Duo Pressure beverage system. K-fee partnered with major retailers such as Bed, Bath & Beyond and Amazon to reach its customers in the United States.[9]

27.    To ensure quality at each step of production, K-fee built its own roasting house in Bergisch-Gladbach to expand production and roast coffees in-house.[10]

28.    K-fee currently offers several single-serve coffee machines, including the K-fee Square, the K-fee Twins II, and the K-fee Grande. They are all compatible with K-fee's proprietary drink capsules. Striving to provide an all-inclusive at-home barista experience, K-fee also offers accessories such as milk frothers, specialty espresso glassware sets, and capsule dispensers.

29.    Recognizing the value of its intellectual property, K-fee applied for a multitude of patents in the early 2010s. The USPTO subsequently issued several beverage system and capsule patents to K-fee, including the K-fee Patents that are the subject of this suit.

## II.    DEFENDANTS PROFIT FROM THEIR INFRINGEMENT OF K-FEE'S PATENTED INVENTIONS

30.    Defendants introduced the first of the Infringing Products on March 1, 2014. Nestlé USA and Nestlé S.A. control the research and development of new products for all Nestlé-owned brands in the United States, and they developed the Vertuo specifically for North American consumers.[11] Under the control of Nestlé USA and Nestlé S.A., Nespresso is the Nestlé business arm that operates and sells the Infringing Products in the United States.

---

[9] *Id.*
[10] *The K-fee Story*, K-FEE, https://www.k-fee.com/en/why/ (last visited March 31, 2021).
[11] *Nespresso Set to Revolutionize,* CISION, https://www.prnewswire.com/news-releases/nespresso-set-to-revolutionize-the-north-american-coffee-market-with-the-launch-of-vertuoline-246133981.html#:~:text=VertuoLine%E2%84%A2%20will%20be%20available%20at%20all%20Nespresso%20Flagship%20Boutiques,Hills)%20beginning%20March%201st.&text=Nestle%20Nespresso%20SA%20is%20the,highest%2Dquality%20portioned%20premium%20coffee (last visited March 26, 2021).

8

McKOOL SMITH, P.C.

31.    Nestlé S.A. and Nespresso touted the Vertuo as a groundbreaking advancement, emphasizing its "Centrifusion™ technology. . . The intelligent extraction system provides an extremely high level of precision as the machine recognizes, through barcode technology, each expertly designed coffee capsule and adjusts the extraction parameters to brew each blend in the most optimal way."[12] Then CEO Jean-Marc Duvoisin stated: "We believe we are poised to reshape the entire industry in North America. We are entering a highly competitive market with a premium offering, and VertuoLine will win on quality and technology."[13]

32.    Nestlé S.A. released its year-end financial results from 2020, which include the revenue generated by Nestlé USA and Nespresso. The data indicates that Nestlé S.A.'s coffee division saw "mid-single digit growth," largely driven by strong Nespresso sales. Coffee continues to reflect some of the strongest growth numbers in Nestlé S.A.'s entire portfolio, and beverages are the largest component of the conglomerate's overall sales. Particularly, "North America continued to see market share gains, with the United States becoming Nespresso's largest market."[14] Defendants specifically market the Infringing Products to consumers in the United States.

33.    Defendants' foray into the high-end American market is centered on the Infringing Products. Defendants' unauthorized and unlicensed use of the K-fee Patents has substantially contributed to Nespresso's financial success and continued market-share growth in the United States. As a significant factor in Nestlé S.A. and Nestlé

---

[12] *Id.*

[13]*New Nespresso system aims to reshape North American coffee industry,* INTRADO, https://www.globenewswire.com/news-release/2014/02/19/611255/10068929/en/New-Nespresso-system-aims-to-reshape-North-American-coffee-industry.html (last visited March 26, 2021).

[14]*Nestle reports full-year results for 2020,* NESTLE https://www.nestle.com/media/pressreleases/allpressreleases/full-year-results-2020 (last accessed March 31, 2021).

9

McKool Smith, P.C.

1    USA's overall sales, Nespresso's ultimate success—or failure—significantly impacts

2    Defendants' overall success.

3                              **FIRST CLAIM FOR RELIEF**

4                  **INFRINGEMENT OF U.S. PATENT NO. 10,858,176**

5          34.    Plaintiff re-alleges and incorporates by reference the allegations of

6    paragraphs 1–33 of this Complaint.

7          35.    On December 8, 2020, after a full examination on the merits, the United

8    States Patent and Trademark Office issued the '176 Patent. The '176 Patent is valid

9    and enforceable under United States Patent Laws.

10         36.    K-fee owns, by assignment, all right, title, and interest in and to the '176

11   Patent, including the right to collect for past damages.

12         37.    A copy of the '176 Patent is attached as Exhibit A.

13                              **The '176 Patent**

14         38.    Prior to inventing the ideas that form the basis of the '176 Patent, K-fee

15   recognized several problems with existing single-serve beverage systems, especially

16   those for making coffee beverages. For example, because a large number of coffee

17   pods with different characteristics were available in the market, a consumer could

18   insert a type of pod into a beverage system for which it was not designed. This cross-

19   use can destroy the beverage system or harm the user. Indeed, the '176 Patent notes:

20         [I]t is possible that the manufacturer's capsules are used in a coffee
21         machine designed by another manufacturer, although they are not suited
           for it. This may result in significant security issues and/or the coffee
22         machine may be damaged.

23   '176 Patent at 1:17–21.

24         [I]nserting the wrong portion capsule . . . endangers the brewing
25         chamber's tightness. In this case hot water can be discharged under high
           pressure and therefore compromise the user's safety. Otherwise it is also
26         possible that inserting the wrong portion capsule damages the coffee
           machine.
27

28                                      10

McKool Smith, P.C.

*Id.* at 8:18–23.

39.   To remedy these problems, the '176 Patent provides a barcode on the capsule, which is read and interpreted by the brewing machine. *Id.* at Fig 2A and 2B. This inventive system provides multiple benefits over existing systems on the market. First, it allows the brewing machine to determine whether the capsule is suitable for the machine, thus preventing damage to both the machine and the user. *Id.* at 1:32–34. Second, it allows the machine to control the beverage's brewing parameters. In one embodiment, the machine may "adapt[], for example, the pressure, the temperature and/or the amount of water." *Id.* at 5:60–61. In this way, a consistent, quality beverage can be produced from the system.

40.   At a high level, the '176 Patent describes using an apparatus to read barcodes from portion capsules in order to control production of the respective coffee beverages. The portion capsules have a variety of characteristics, including a base element, a flange, a barcode, ribs, grooves, a cavity, and a lid.

41.   More specifically, the '176 Patent describes a "portion capsule for producing a beverage" and a technique for producing that beverage with a machine. *Id.* at Abstract. The portion capsule includes a base element, lid, cavity, flange, and radially spaced ribs and grooves. *Id.* at claim 1. The capsule's barcode is located on the bottom side of the capsule's flange. *Id.* A user inserts the capsule into the beverage machine, at which point the machine reads the barcode with a barcode reader and controls the production process of the beverage based on the read barcode. *Id.* To prepare the beverage, the machine pierces the capsule's lid with a mandrel, seals the lid against a seal of the machine, and introduces heated water into the capsule through a water inlet. *Id.* The machine may receive multiple capsules, and controls the production process according to the barcode, which may be different for each capsule. *Id.* For example, one barcode may specify a particular temperature,

MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.

11

McKool Smith, P.C.

pressure, and/or water amount, while another barcode may specify a different temperature, pressure, and/or water amount. *Id.* at 3:23–27.

### '176 Patent Allegations

42.    Defendants designed, market, and currently sell a variety of coffee capsules and systems, most notably and pertinently the Infringing Products. Nespresso boasts that the Infringing Products use capsule recognition and a barcode system to prevent third-party capsules from being used in the Infringing Products. *See*, *e.g.*, https://www.Nestlé.com/sites/default/files/asset-library/documents/investors/nis-2014-boston/nespresso.pdf. Nespresso also touts the Infringing Products as "one of the most important Nespresso innovations in the past 25 years." https://Nestlé-nespresso.com/news/nespresso-sets-to-revolutionise-north-american-coffee-market.

43.    Defendants' Infringing Products practice the claims of the '176 Patent. Defendants' Infringing Products include an apparatus that includes a barcode reader. For example, the Nespresso website indicates that the Infringing Products include an apparatus that "reads the barcode on each capsule":



https://www.nespresso.com/us/en/choose-your-technology-vertuo. And a variety of Nespresso videos explain how the apparatus reads the barcode on the capsule:

COMPLAINT FOR PATENT INFRINGEMENT



Experience the Revolution of Coffee: Introducing the Nespresso VertuoLine

*See, e.g.,* Nespresso "Experience the Revolution of Coffee: Introducing the Nespresso VertuoLine," video at https://www.youtube.com/watch?v= yo40pcEfbPE&list=PLQ2eIUsAVWUyFnvlm-D0F60aAGaXl9Q&index=2; Nespresso, "Nespresso Vertuo: How To – Coffee Preparation," video at https://www.youtube.com/watch?v=__KOHPZXzcs; https://www.youtube.com/watch?v=RTzUiX101C0; Nespresso, "Nespresso VertuoLine: How To – Directions For Use, video at https://www.youtube.com/watch?v=9zya9IN3rEA.

44.    The Infringing Products also receive a first portion capsule into the apparatus, where the capsule includes a first foil lid sealed to a base element having a cavity within which a powdered coffee material is located, the cavity being free of a filter and including a central portion, and a plurality of ribs that are radially spaced, vertically oriented, and configured to extend toward the central portion of the cavity, the base element including a circumferential flange having a top side to which the first foil lid is sealed and an opposing bottom side with a first barcode located on the bottom side, the base element of the first portion capsule including an outside surface

13

McKool Smith, P.C.

McKool Smith, P.C.

having a plurality of vertically oriented grooves. For example, the Infringing Products include a number of capsules as shown below:



https://www.nespresso.com/us/en/vertuo-coffee-capsules. Each of these capsules has a foil lid sealed to a base element. Between the lid and base element is a cavity within which a powdered coffee material is located. The cavity is free of a filter and includes a central portion. The capsule's outer surface includes grooves, shown above, that are vertically oriented. Similarly, the capsule includes a plurality of ribs that are radially spaced, vertically oriented, and configured to extend toward the central portion of the cavity. The capsule's base element includes a circumferential flange having a top side to which the first foil lid is sealed. The flange also includes a bottom side where the first barcode is located as shown in each of the above capsules and at Nespresso's website as shown below:

14



https://sustainability.nespresso.com/why-aluminium.

45.     Defendants' Infringing Products read the first barcode with the barcode reader and control a production process of a first coffee beverage based upon the reading of the first barcode. As described by Nespresso's website, "each Vertuo machine[] uses barcode recognition . . . The unique barcode on each capsule adjusts the flow and volume of water, temperature, infusion time and capsule rotation . . .":



https://www.nespresso.com/us/en/choose-your-technology-vertuo.

46.     Defendants' Infringing Products pierce the first foil lid with a mandrel of the apparatus in a region that is offset from a central axis of the first portion capsule. For example, the Infringing Products use a mandrel to pierce the capsule's lid with a pattern of holes offset from the capsule's central axis. For example, the video still below shows the Infringing Product lids are punctured in a pattern offset from the central axis.

McKool Smith, P.C.

15

1

2

3

4

5

6

7

8



9  Nespresso, "At the heart of Nespresso Vertuo system" video at

10 https://www.youtube.com/watch?v=RTzUiX101C0; *See also*

11 https://www.nespresso.com/de/en/nespresso-vertuo-kapselmaschinen-technologie.

12    47.    Defendants' Infringing Products seal the first foil lid against a seal of the

13 apparatus, introduce heated water into the first portion capsule through a water inlet of

14 the apparatus that is arranged along the central axis of the portion capsule to form the

15 first coffee beverage, and unload the first portion capsule. For example, the following

16 video stills show that the first foil lid is sealed against the machine, how water is

17 introduced along the central axis of the portion capsule, and how the capsule is

18 unloaded in the Infringing Products:

19

20

21

22

23

24

25

26

27

28



COMPLAINT FOR PATENT INFRINGEMENT

1   Nespresso, "At the heart of Nespresso Vertuo system," video at
2   https://www.youtube.com/watch?v=RTzUiX101C0.



12   Nespresso, "Nespresso VertuoLine How To – Directions for Use," video at
13   https://www.youtube.com/watch?v=9zya9IN3rEA.

23   Nespresso, Nespresso Vertuo Next – Coffee Preparation, video at
24   https://www.youtube.com/watch?v=T9nixM1467Y.

25        48.     Defendants' Infringing Products insert a second portion capsule into the
26   beverage system. The second capsule has a foil lid sealed to a base element. Between
27   the lid and base element is a cavity within which a powdered coffee material is

McKool Smith, P.C.

located. The cavity is free of a filter and includes a central portion. The capsule's outer surface includes grooves that are vertically oriented. Similarly, the capsule includes a plurality of ribs that are radially spaced, vertically oriented, and configured to extend toward the central portion of the cavity. The capsule's base element includes a circumferential flange having a top side to which the first foil lid is sealed. The capsule has a bottom side, where the second, different, barcode is located, all of which are shown in paragraph 45 and below:



https://sustainability.nespresso.com/why-aluminium.

49.    Defendants' Infringing Products read the second barcode with the barcode reader and control a production process of a second coffee beverage based upon the reading of the second barcode. The second production process is different than the first. For example, the Nespresso website indicates that the Infringing Products include an apparatus that "uses barcode recognition . . . The unique barcode on each capsule adjusts the flow and volume of water, temperature, infusion time and capsule rotation", which will be different for different barcodes, as shown and described above in paragraphs 43 and 45. *See also* https://www.nespresso.com/us/en/choose-your-technology-vertuo; Nespresso "Experience the Revolution of Coffee: Introducing the Nespresso VertuoLine," video at https://www.youtube.com/watch?v=yo40pcEfbPE&list=PLQ2eIUsAVWUyFnvlm-D0F60aAGaXl9Q&index=2; Nespresso, "Nespresso Vertuo: How To – Coffee Preparation at https://www.youtube.com/watch?v=__KOHPZXzcs; Nespresso, "At the heart of

McKool Smith, P.C.

1  Nespresso           Vertuo          system," video           at
2  https://www.youtube.com/watch?v=RTzUiX101C0;
3  https://www.nespresso.com/us/en/vertuo-coffee-capsules; Nespresso, "Nespresso
4  VertuoLine:    How    To  –  Direction   For   Use," video    at
5  https://www.youtube.com/watch?v=9zya9IN3rEA.

6      50.    Defendants' Infringing Products then pierce the second lid with the
7  mandrel in a region of the second capsule that is offset from the second capsule's
8  central axis. For example, the Infringing Products use a mandrel to pierce the second
9  capsule's lid with a pattern of holes offset from the capsule's central axis as shown
10 and      described      above      in      paragraph      46.   *See    also*
11 https://www.nespresso.com/de/en/nespresso-vertuo-kapselmaschinen-technologie.

12     51.    Defendants' Infringing Products seal the top side of the flange and/or
13 second foil lid against a seal of the apparatus, and introduce heated water into the
14 second portion capsule to form the second coffee beverage. For example the
15 Infringing Products video still shown and described above in paragraph 47 show that
16 the second foil lid is sealed against the machine, and how water is introduced along
17 the central axis of the portion capsule to form the second beverage. *See also*
18 Nespresso,  "At   the   heart   of   Nespresso   Vertuo   system," video    at
19 https://www.youtube.com/watch?v=RTzUiX101C0;       https://www.nespresso.com/
20 de/en/nespresso-vertuo-kapselmaschinen-technologie (demonstrating how water is
21 pulled from the tank across the pod to produce the beverage).

22     52.    Defendants have infringed and are infringing, individually and/or jointly,
23 either literally or under the doctrine of equivalents, at least claims 1–3 and 10–14 of
24 the '176 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by
25 making, using, offering for sale, selling, offering for lease, leasing in the United
26 States, and/or importing into the United States without authority or license, the
27 Infringing Products.

28

COMPLAINT FOR PATENT INFRINGEMENT

MCKOOL SMITH, P.C.

53.     Defendants have been, and currently are, active inducers of infringement of one or more claims of the '176 Patent under 35 U.S.C. § 271(b). One or more of Defendants' Infringing Products directly and/or indirectly infringe (by induced infringement) at least claims 1–3 and 10–14 of the '176 Patent, literally and/or under the doctrine of equivalents.

54.     On information and belief, Defendants had notice of the application that ultimately matured into the '176 Patent, and their infringement of the '176 Patent, by at least May 15, 2019. However, to the extent Defendants contend they did not have notice by this date, this Complaint will serve as notice to Defendants of the '176 Patent and its infringement.

55.     Defendants intentionally encourage and aid at least their customers, including retail and individual customers, to directly infringe the '176 Patent.

56.     Defendants provide the Infringing Products and instructions to their users such that they will use the Infringing Products in a directly infringing manner. Defendants market the Infringing Products to their users and provide instructions to their users on how to use the functionality of the '176 Patent on its websites and elsewhere. *See*, *e.g.,* https://www.nespresso.com/us/en/machine-assistance#!/Vertuoline/instructions/coffee-preparation/guide; Nespresso, "Nespresso Vertuo: How To-Coffee Preparation," video at https://www.youtube.com/watch?v=__KOHPZXzcs; Nespresso, "Nespresso How to: First Start," video at https://www.youtube.com/watch?v=BHF65Mgp0GE; Nespresso, "Nespresso Barista Masterclass," video at https://www.youtube.com/watch?v=euGafl2S5Vw&t=190s; Nespresso, "At the Heart of the Vertuo System," video at https://www.youtube.com/watch?v=RTzUiX101C0; Nespresso, "Nespresso Vertuo Next System," video at https://www.youtube.com/watch?v=T9nixM1467Y.

COMPLAINT FOR PATENT INFRINGEMENT

McKool Smith, P.C.

57.    Defendants' customers directly infringe by using the Infringing Products in their intended manner. Defendants induce such infringement by providing the Infringing Products and instructions to enable and facilitate infringement. Defendants have knowledge of and specifically intend that their actions will result in infringement of the '176 Patent or have taken deliberate actions to avoid learning of infringement.

58.    Additional allegations regarding Defendants' knowledge of the '176 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

59.    Defendants further indirectly infringe the '176 Patent by contributing to infringement by others, such as end users, and Defendants have contributed to and/or continue to contribute to infringement of at least claims 1–3 and 10–14 of the '176 Patent, pursuant to 35 U.S.C. § 271(c), by virtue of their offers to sell and/or sale within the United States of a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, which are not staple articles or commodities of commerce and which have no non-infringing use.

60.    In particular, Defendants have offered to sell and/or sold the Infringing Products, which constitute a material part of the invention of the '176 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '176 Patent, and knowing that the same are not staple articles or commodities of commerce suitable for substantial non-infringing use.

61.    Defendants' infringement of the '176 Patent is willful and deliberate, entitling K-fee to enhanced damages and attorneys' fees.

62.    Defendants' infringement of the '176 Patent is exceptional and entitles K-fee to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

21

McKOOL SMITH, P.C.

63.     K-fee has been damaged by Defendants' infringement of the '176 Patent and will continue to be damaged unless Defendants are enjoined by this Court. K-fee has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors K-fee, and public interest is not disserved by an injunction.

64.     K-fee is entitled to recover compensation from Defendants for all damages that K-fee has sustained as a result of Defendants' infringement of the '176 Patent, including without limitation, lost profits and/or not less than a reasonable royalty.

**SECOND CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. 10,858,177**

65.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1–64 of this Complaint.

66.     On December 8, 2020, after a full examination on the merits, the United States Patent and Trademark Office issued the '177 Patent. The '177 Patent is valid and enforceable under United States Patent Laws.

67.     K-fee owns, by assignment, all right, title, and interest in and to the '177 Patent, including the right to collect for past damages.

68.     A copy of the '177 Patent is attached as Exhibit B.

**The '177 Patent**

69.     The '177 Patent describes, among other things, a beverage system that includes a portion capsule and a beverage machine. The '177 Patent's portion capsule includes a lid sealed to a base element with grooves and ribs, a cavity that contains a raw beverage material, and a flange having a bottom side with a barcode and a top side to which the lid is fastened. Additionally, the beverage machine has a detector that reads the barcode from the capsule. When that barcode agrees with a stored reference, the machine's pump will push water through the capsule.

22

70.    As noted above in paragraph 38, K-fee recognized several problems with existing single-serve beverage systems before inventing the ideas claimed in the '177 Patent. For instance, by using incompatible pods, consumers may inadvertently damage their beverage systems or harm themselves. *See*, *e.g.*, '177 Patent at 1:17–21, 8:18–23.

71.    The '177 Patent inventor addressed these issues by including a barcode system. A barcode is placed on the capsule, and the beverage machine reads the barcode. *Id*. at 8:40–49. As explained above, this inventive system has multiple benefits over existing systems, including the prevention of damage to both the machine and the user, and better control over the beverage's production process. *Id*. at 8:58–64. In one embodiment, the machine may "adapt[], for example, the pressure, the temperature and/or the amount of water." *Id*. at 5:60–61. These advancements provide a consistent, quality beverage from the system.

72.    At a high level, the '177 Patent describes a beverage system that features an apparatus to read barcodes from portion capsules in order to control production of the respective coffee beverages. The portion capsules have a variety of characteristics, including a base element, a flange, a barcode, ribs, grooves, a cavity, and a lid. The machine includes a barcode detector, a media chute to transport the capsule, and a pump that activates upon recognition of the capsule's barcode. *Id.* at Abstract.

73.    More specifically, the '177 Patent describes a beverage system that "includes a portion capsule and a beverage machine." *Id*. The portion capsule includes a foil lid, base element, raw beverage material, circumferential flange, and a barcode on the bottom side. *Id*. at claim 1. The beverage machine itself includes a barcode detector, a chute configured to support the portion capsule, and a pump that only pushes hot water and activates the beverage system if the barcode agrees with a stored reference. *Id*. The capsule's base element contains a plurality of grooves spaced radially and vertically oriented around the capsule. *Id*. The barcode reader determines

MCKOOL SMITH, P.C.

whether the barcode contains information that matches with information stored in the machine, and pushes water through the capsule when there is a match. *Id.*

### '177 Patent Allegations

74.    As explained above, Defendants designed, market, and currently sell a variety of coffee capsules and systems, most notably and pertinently the Infringing Products. Defendants boast that the Infringing Products use capsule recognition and a bar code system to prevent anyone from using third-party capsules in their machines. *See*, *e.g.*, https://www.Nestlé.com/sites/default/files/asset-library/documents/investors/nis-2014-boston/nespresso.pdf. Nespresso also touts the Infringing Products as "one of the most important Nespresso innovations in the past 25 years." https://Nestlé-nespresso.com/news/nespresso-sets-to-revolutionise-north-american-coffee-market.

75.    Defendants' Infringing Products practice the claims of the '177 Patent. Defendants' Infringing Products consist of beverage systems that produce a beverage. The system includes a portion capsule with a foil lid sealed to a base element having a cavity where a raw beverage material sits. The base element includes a circumferential flange with a top side for attaching the lid, and a bottom side having a barcode, all of which are shown and described in paragraph 44 above. In addition, the video still below shows an Infringing Product capsule having a foil lid sealed to a base element for containing the coffee, where the base element has a flange where the barcode sits and the lid is attached:



24

McKool Smith, P.C.

Nespresso, "Nespresso Vertuo: How To – Coffee Preparation," video at https://www.youtube.com/watch?v=__KOHPZXzcs.

76.    Defendants' Infringing Products also include a beverage machine with a barcode detector, a media chute configured to receive and support the portion capsule, and a pump that controls pushing hot water through the capsule if the barcode agrees with a stored reference. For example, the Infringing Products include a machine with a barcode reader that reads the capsule's barcode and controls sending hot water into the capsule based on the barcode agreeing with a stored reference so that the system "automatically      adjust[s]      to      the      perfect      settings."    *See* https://www.nespresso.com/us/en/choose-your-technology#vertuo; *see also* Nespresso "Experience the Revolution of Coffee: Introducing the Nespresso VertuoLine," video at                                  https://www.youtube.com/watch?v= yo40pcEfbPE&list=PLQ2eIUsAVWUyFnvlm-D0F60aAGaXl9Q&index=2.        The Infringing Products also include a media chute that receives and supports the capsule, all of which are shown and described in paragraphs 44 and 46, and/or in the video/image cited below:



COMPLAINT FOR PATENT INFRINGEMENT

McKool Smith, P.C.

https://www.nespresso.com/us/en/choose-your-technology#vertuo; Nespresso, "At the heart of Nespresso Vertuo system," video at https://www.youtube.com/watch?v=RTzUiX101C0.

77.    Defendants' Infringing Products have capsules that include a base element with a wall region with an electrically conductive section and radially spaced and vertically oriented drawn grooves. The cavity also includes radially spaced and vertically oriented drawn ribs. For example, the Infringing Products include capsules formed with electrically conductive materials, and have radially spaced and vertically oriented drawn grooves and ribs, all of which are shown below and described in detail in paragraph 44:



*See also* https://www.nespresso.com/us/en/vertuo-coffee-capsules.

78.    Defendants have infringed and are infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1, 4, and 5 of the '177 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States, without authority or license, the Infringing Products.

79.    Defendants have been, and currently are, active inducers of infringement of one or more claims of the '177 Patent under 35 U.S.C. § 271(b). One or more of Defendants' Infringing Products directly and/or indirectly infringe (by induced infringement) at least claims 1, 4, and 5 of the '177 Patent, literally and/or under the doctrine of equivalents.

26

McKool Smith, P.C.

McKool Smith, P.C.

80.    This Complaint will serve as notice to Defendants of the '177 Patent and its infringement should Defendants contend that they did not previously have knowledge thereof.

81.    Defendants intentionally encourage and aid at least their customers, including retail and individual customers, to directly infringe the '177 Patent.

82.    Defendants provide the Infringing Products and instructions to their users such that they will use the Infringing Products in a directly infringing manner. Defendants market the Infringing Products to their users and provide instructions to their users on how to use the functionality of the '177 Patent on their websites and elsewhere. *See*, *e.g.*, https://www.nespresso.com/us/en/machine-assistance#!/Vertuoline/instructions/coffee-preparation/guide; Nespresso, "Nespresso Vertuo: How To-Coffee Preparation," video at https://www.youtube.com/watch?v=__KOHPZXzcs; Nespresso, "Nespresso How to: First Start," video at https://www.youtube.com/watch?v=BHF65Mgp0GE; Nespresso, "Nespresso Barista Masterclass," video at https://www.youtube.com/watch?v=euGafl2S5Vw&t=190s; Nespresso, "At the Heart of the Vertuo System," video at https://www.youtube.com/watch?v=RTzUiX101C0; Nespresso, "Nespresso Vertuo Next System," video at https://www.youtube.com/watch?v=T9nixM1467Y.

83.    Defendants' customers directly infringe by using the Infringing Products in their intended manner. Defendants induce such infringement by providing the Infringing Products and instructions to enable and facilitate infringement. Defendants have knowledge of and specifically intend that their actions will result in infringement of the '177 Patent or have taken deliberate actions to avoid learning of infringement.

84.    Additional allegations regarding Defendants' knowledge of the '177 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

85.    Defendants further indirectly infringe the '177 Patent by contributing to infringement by others, such as end users, and Defendants have contributed to and/or continue to contribute to infringement of at least claims 1, 4, and 5 of the '177 Patent, pursuant to 35 U.S.C. § 271(c), by virtue of their offers to sell and/or sale within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, which are not staple articles or commodities of commerce and which have no non-infringing use.

86.    In particular, Defendants have offered to sell and/or sold the Infringing Products, which constitute a material part of the invention of the '177 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '177 Patent, and knowing that the same are not staple articles or commodities of commerce suitable for substantial noninfringing use.

87.    Defendants' infringement of the '177 Patent is willful and deliberate, entitling K-fee to enhanced damages and attorneys' fees.

88.    Defendants' infringement of the '177 Patent is exceptional and entitles K-fee to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

89.    K-fee has been damaged by Defendants' infringement of the '177 Patent and will continue to be damaged unless Defendants are enjoined by this Court. K-fee has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors K-fee, and public interest is not disserved by an injunction.

90.    K-fee is entitled to recover compensation from Defendants for all damages that K-fee has sustained as a result of Defendants' infringement of the '177 Patent, including without limitation, lost profits and/or not less than a reasonable royalty.

**THIRD CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. 10,870,531**

91.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1–90 of this Complaint.

92.     On December 22, 2020, after a full examination on the merits, the United States Patent and Trademark Office issued the '531 Patent. The '531 Patent is valid and enforceable under United States Patent Laws.

93.     K-fee owns, by assignment, all right, title, and interest in and to the '531 Patent, including the right to collect for past damages.

94.     A copy of the '531 Patent is attached as Exhibit C.

**The '531 Patent**

95.     Prior to inventing the ideas that form the basis of the '176 Patent and its family members (including the '177 and '531 Patents), K-fee recognized several problems with existing single-serve beverage systems, as described in detail above in paragraph 38. These problems include potentially destroying the beverage system and harming the user when incompatible capsules are used in the machine. '531 Patent at 1:17–21, 8:18–23.

96.     To overcome these issues, the '531 Patent's inventor decided to include a beverage system with certain characteristics. In particular, a barcode is placed on a beverage capsule, and the beverage machine reads the barcode. *Id*. at 8:43–55. As described in detail in paragraph 39, K-fee's innovation prevents damage to both the machine and the user, and allows the machine to produce a quality beverage by controlling "for example, the pressure, the temperature and/or the amount of water." *Id.* at 5:60–61, 8:61–65.

97.     At a high level, the '531 Patent describes a method for producing beverages from capsules. The system uses an apparatus to read barcodes from portion capsules in order to control production of the respective coffee beverages. The portion

McKool Smith, P.C.

capsules have a variety of characteristics, including a base element, a flange, a barcode, ribs, grooves, a cavity, and a lid.

98.    More specifically, the '531 Patent describes a method of using a portion capsule for producing a beverage by providing an apparatus that includes a barcode reader and a pump adapted to supply heated water. *Id.* at claim 1. The method also involves inserting a capsule into the apparatus, where the capsule includes a base element, lid, cavity, flange, and wall region with an electrically conductive section. *Id.* The capsule's base element contains a plurality of grooves spaced radially and vertically oriented around the capsule, and the barcode is located on the bottom side. *Id.* The system loads the beverage capsule, pierces the capsule's foil lid, reads the barcode, and activates the pump to push heated water into the capsule if the read barcode agrees with a stored reference. *Id.*

### '531 Patent Allegations

99.    Defendants designed, market, and currently sell the Infringing Products in the United States. The Infringing Products use capsule recognition and a barcode system to prevent third-party cups from being used in the Infringing Products, and have been advertised as "one of the most important Nespresso innovations in the past 25 years." *See*, *e.g.*, https://www.Nestlé.com/sites/default/files/asset-library/documents/investors/ nis-2014-boston/nespresso.pdf; https://Nestlé-nespresso.com/news/nespresso-sets-to-revolutionise-north-american-coffee-market.

100.    Defendants' Infringing Products practice the claims of the '531 Patent. Defendants' Infringing Products operate a method of using a portion capsule for producing a beverage. This method includes providing an apparatus with a barcode reader and a pump adapted to supply heated water. *See* https://www.nespresso.com/us/en/vertuo-coffee-capsules. For example, the Infringing Products include a machine that has both a barcode reader and a pump to supply

30

heated water as shown and described in detail at paragraphs 43, 45, and 47, as well as the video and citations below:



Nespresso, "At the heart of Nespresso Vertuo system," video at https://www.youtube.com/watch?v=RTzUiX101C0;          *see       also* https://www.nespresso.com/     us/en/choose-your-technology-vertuo;     Nespresso "Experience the Revolution of Coffee: Introducing the Nespresso VertuoLine," video at https://www.youtube.com/watch?v=yo40pcEfbPE&list=PLQ2eIUsAVWUy Fnvlm -D0F60aAGaXl9Q&index=2; Nespresso, "Nespresso VertuoLine: How To – Directions For Use," video at https://www.youtube.com/watch?v=9zya9IN3rEA.

101. Defendants' Infringing Products insert a portion capsule into the machine, where the portion capsule includes a foil lid sealed to a base element having a cavity where a raw beverage material sits. The base element includes a flange that has a top side that seals to the foil lid, and a bottom side where the barcode is located. The base element has a wall region with an electrically conductive section and radially spaced and vertically oriented grooves, while the cavity includes radially spaced and vertically oriented ribs. The capsule does not contain a filter, and the base element and/or the lid are made of metal. For example, the Infringing Products' capsules include an aluminum lid and base, which contains coffee and no filter. The base also has a flange that seals to the lid on one side and contains a barcode on the other side. The ribs and grooves are also visible, all of which are described in detail above at paragraph 44 and as shown below:





*See*, *also* https://www.nespresso.com/us/en/vertuo-coffee-capsules; https://sustainability.nespresso.com/why-aluminium.

102. Defendants' Infringing Products pierce the portion capsule's foil lid, read the barcode with a barcode reader, and determine whether the capsule's barcode matches a stored reference. If the barcode agrees with a stored reference, the

32

McKool Smith, P.C.

McKool Smith, P.C.

1  Infringing Products activate a pump to push heated water into the portion capsule. For
2  example, as seen in the video excerpted below, the Infringing Products pierce the
3  capsule's lid, the barcode reader reads the barcode, and the pump is activated to
4  optimize at least the water flow and temperature for the particular pod based on the
5  barcode's agreement with a stored reference. *See* Nespresso, "At the heart of
6  Nespresso             Vertuo             system,"             video             at
7  https://www.youtube.com/watch?v=RTzUiX101C0; *see also* paragraph 47 above.

8       103.   As another example, Nespresso's website states that "each Vertuo
9  machine[] uses barcode recognition . . . The unique barcode on each capsule adjusts
10  the flow and volume of water, temperature, infusion time and capsule rotation . . .":



https://www.nespresso.com/us/en/choose-your-technology-vertuo.

20       104.   Defendants have infringed and are infringing, individually and/or jointly,
21  either literally or under the doctrine of equivalents, at least claims 1–3, 5–8, 10–11,
22  14, and 16 of the '531 Patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or
23  indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the
24  United States, and/or importing into the United States without authority or license, the
25  Infringing Products.

26       105.   Defendants have been, and currently are, active inducers of infringement
27  of one or more claims of the '531 Patent under 35 U.S.C. § 271(b). One or more of

28                                               33

Defendants' Infringing Products directly and/or indirectly infringe (by induced infringement) at least claims 1–3, 5–8, 10–11, 14, and 16 of the '531 Patent, literally and/or under the doctrine of equivalents.

106.    This Complaint will serve as notice to Defendants of the '531 Patent and its infringement should Defendants contend that they did not previously have knowledge thereof.

107.    Defendants intentionally encourage and aid at least their customers, including retail and individual customers, to directly infringe the '531 Patent.

108.    Defendants provide the Infringing Products and instructions to their users such that they will use the Infringing Products in a directly infringing manner. Defendants market the Infringing Products to their users and provide instructions to their users on how to use the functionality of the '531 Patent on its websites and elsewhere.    *See*,    *e.g.*,    https://www.nespresso.com/us/en/machine-assistance#!/Vertuoline/instructions/coffee-preparation/guide; Nespresso, "Nespresso Vertuo:    How    To-Coffee    Preparation,"    video    at    https://www.youtube.com/watch?v=__KOHPZXzcs;  Nespresso, "Nespresso How to: First Start," video at https://www.youtube.com/watch?v=BHF65Mgp0GE; Nespresso, "Nespresso    Barista    Masterclass,"    video    at https://www.youtube.com/watch?v=euGafl2S5Vw&t=190s; Nespresso, "At the Heart of the Vertuo System," video at https://www.youtube.com/watch?v=RTzUiX101C0; Nespresso,    "Nespresso    Vertuo    Next    System,"    video    at    https://www.youtube.com/watch?v=T9nixM1467Y.

109.    Defendants' customers directly infringe by using the Infringing Products in their intended manner. Defendants induce such infringement by providing the Infringing Products and instructions to enable and facilitate infringement. On information and belief, Defendants have knowledge of and specifically intend that

McKool Smith, P.C.

their actions will result in infringement of the '531 Patent or have taken deliberate actions to avoid learning of infringement.

110.  Additional allegations regarding Defendants' knowledge of the '531 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

111.  Defendants further indirectly infringe the '531 Patent by contributing to infringement by others, such as end users, and Defendants have contributed to and/or continue to contribute to infringement of at least claims 1–3, 5–8, 10–11, 14, and 16 of the '531 Patent, pursuant to 35 U.S.C. § 271(c), by virtue of their offers to sell and/or sale within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, which are not staple articles or commodities of commerce and which have no non-infringing use.

112.  In particular, Defendants have offered to sell and/or sold the Infringing Products, which constitute a material part of the invention of the '531 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '531 Patent, and knowing that the same are not staple articles or commodities of commerce suitable for substantial non-infringing use.

113.  Defendants' infringement of the '531 Patent is willful and deliberate, entitling K-fee to enhanced damages and attorneys' fees.

114.  Defendants' infringement of the '531 Patent is exceptional and entitles K-fee to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

115.  K-fee has been damaged by Defendants' infringement of the '531 Patent and will continue to be damaged unless Defendants are enjoined by this Court. K-fee has suffered and continues to suffer irreparable injury for which there is no adequate

McKool Smith, P.C.

35

remedy at law. The balance of hardships favors K-fee, and public interest is not disserved by an injunction.

116. K-fee is entitled to recover compensation from Defendants for all damages that K-fee has sustained as a result of Defendants' infringement of the '531 Patent, including without limitation, lost profits and/or not less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, K-fee prays for a judgment in its favor and against Defendants and respectfully requests the following relief:

1. A judgment declaring that Defendants have infringed one or more claims of each of the K-fee Patents asserted in this litigation;

2. An injunction pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, directors, attorneys, agents, servants, employees, parties in privity with, and all persons in active concert or participation with any of the foregoing, from continued acts of infringement, contributing to infringement, or inducing infringement of the K-fee Patents in this litigation;

3. A judgment requiring Defendants to make an accounting of damages resulting from Defendants' infringement of the K-fee Patents in this litigation;

4. A judgment awarding K-fee its damages resulting from Defendants' infringement of the K-fee Patents in this litigation, and increasing such damages pursuant to 35 U.S.C. § 284 because of the willful and deliberate nature of Defendants' conduct;

5. A judgment requiring Defendants to pay K-fee's costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of each of the K-fee Patents in this litigation;

6. A judgment finding that this is an exceptional case and awarding K-fee's attorneys' fees pursuant to 35 U.S.C. § 285;

McKool Smith, P.C.

36

7.    In the event a permanent injunction is not awarded, awarding a compulsory royalty for all future acts of infringement; and

8.    Such other relief as the Court deems just and proper.

DATED: April 21, 2021                    Respectfully submitted,

                                         MCKOOL SMITH, P.C.

                                         BY  /s/ Alan P. Block
                                         ALAN P. BLOCK

                                         ATTORNEYS FOR PLAINTIFF
                                         K-FEE SYSTEM GMBH

McKool Smith, P.C.

37

COMPLAINT FOR PATENT INFRINGEMENT

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38-1, Plaintiff respectfully demands a jury trial of all issues triable to a jury.

DATED: April 21, 2021                    Respectfully submitted,

MCKOOL SMITH, P.C.

BY  */s/ Alan P. Block*

ALAN P. BLOCK

ATTORNEYS FOR PLAINTIFF
K-FEE SYSTEM GMBH

COMPLAINT FOR PATENT INFRINGEMENT